OPINION OF THE COURT
John R Tenney, J.
The above actions present common issues of law involving the authority and status of the Board of Water Supply of the City of Utica. Action number 1 will be referred to as Fraccola and action number 2 as Nelson.
In Fraccola, plaintiff originally alleged a variety of causes of action. He contended, inter alia, that the Board of Water Supply agreed to furnish water for a proposed housing project, but withdrew its consent for a period of time, resulting in damage. A trial of the factual issues was started in September 1986. After opening statements were completed, the parties entered into a settlement agreement but did not seek judicial approval. As part of the settlement, the Board executed a note which provided for payments of $150,000 in 1986 and 1987, and six payments of $25,000 for each of the years from 1988 to 1993. In the event of default, the full payment of $450,000 was to become due and payable after demand.
The Board did not make the initial payment. Therefore, plaintiff exercised its right to accelerate. The Board failed to make the payment because the Comptroller of the City of Utica, Thomas Nelson, refused to issue the check. Plaintiff then commenced this action to enforce the note by motion for summary judgment in lieu of complaint (CPLR 3213).
The Board does not oppose the motion. However, it seeks a declaration from the court that it has the authority to settle actions commenced against it and requests an order directing the Comptroller to honor the settlement.
*908 Comptroller Nelson has moved to intervene. He alleges that he should be permitted to do so in order to adequately meet his responsibility as Comptroller. He maintains he also had an obligation to fulfill his duty to the Utica Board of Estimate and Apportionment and the users of the water supply system. In his proposed answer, he alleges that the Board had no authority to execute the note since (1) it is not a properly constituted municipal entity distinct from the City of Utica and (2) it cannot, without appropriate approval, incur long-term indebtedness, as evidenced by the note. He also has submitted a proposed counterclaim seeking a declaration that the local laws creating the Board of Water Supply were not properly enacted. Specifically, he contends that the mandatory referendum provisions of article 2, section 15, subdivision (5) of the City Home Rule Law and its successor statute, section 23, subdivision (2), paragraph (f) of the Municipal Home Rule Law, were not utilized.*
In the Nelson action, the primary issue involved a computer contract, which the city assigned to the Board. The Board objected to this process as an improper interference with its power. Comptroller Nelson’s answer included a counterclaim which is identical to the proposed counterclaim in the Fraccola action. Thus, both cases raise the common issue of the status of the Water Board. The parties join in the request for a declaratory judgment.
The Fraccola motion for summary judgment in lieu of complaint is denied, and the complaint dismissed. Comptroller Nelson’s request to intervene in the Fraccola action is granted. The counterclaim in both actions requesting a declaration of the status and authority of the Board of Water Supply is determined as set forth herein.
Before addressing the substantive issues, there are numerous procedural problems which must be resolved.
STANDING
There is no question raised regarding Nelson’s standing in action number 2. However, in action number 1, the parties resist his attempt to intervene on the ground that he has no standing, or, in the alternative, that it has been waived.
Under CPLR 1012 (a) (2), a party has the right to intervene *909 "when the representation of the person’s interest by the parties is or may be inadequate and the person is or may be bound by the judgment”.
Under section 11 of the Second Class Cities Law, the Comptroller is an elective officer of the city and is designated, under Second Class Cities Law § 22, as a trustee of the "property, funds and effects of said city”. Under that section he is entitled "to prosecute and maintain an action to prevent waste and injury to any property, funds and estate held in trust”. Furthermore, under Second Class Cities Law §§ 63 and 64, the Comptroller has the obligation to "superintend the fiscal affairs of the city” and to "audit” any claim for payment. Such interests are actual and substantial and ought to be recognized by the courts. (See, e.g., Bethlehem Steel Corp. v Airco, Inc., 105 AD2d 1060; Matter of Cavages, Inc. v Ketter, 56 AD2d 730.)
The motion papers also demonstrate that Nelson’s interests are not adequately represented by the current parties because they claim that the issue of the Board’s valid legal status cannot be raised. If there is a finding that the Board has the right to settle claims, it will bind the Comptroller. Such a determination will effectively take away a power reserved to him. (Second Class Cities Law §§ 63, 64.) Thus, he has a vital interest in this action and should be permitted to intervene. (See generally, Vantage Petroleum, Bay Isle Oil Co. v Board of Assessment Review, 61 NY2d 695; Matter of Martin v Ronan, 47 NY2d 486.)
The parties raise various objections to the request for a declaratory judgment. Some are common to both cases but in the interest of consistency, each will be addressed separately.
LAW OF THE CASE
In the original Fraccola action, there were two separate defendants, the City of Utica and the City of Utica, Board of Water Supply. The city moved to dismiss the complaint against it on the ground that there existed no agency or other relationship between the city and the Water Board, and thus, the city could not be liable for the actions of the Board. The motion was granted, by Justice Inglehart, without opposition (order dated Feb. 27, 1979). The parties contend that Comptroller Nelson is bound by this determination. They argue that any right of intervention has been waived by the voluntary action of the city through the Corporation Counsel.
*910 There is no merit to this conclusion. The doctrine of "law of the case” has no application since it "applies to various stages of the same action or proceeding; its purpose is to avoid the retrial of issues already determined in it”. (Siegel, NY Prac § 448, at 593 [emphasis supplied]; see, Matter of McGrath v Gold, 36 NY2d 406.) Here, there are two distinct actions: the initial action which terminated in settlement and a new action, on the note, which was commenced pursuant to CPLR 3213.
Even if the two actions are viewed as a single matter, the Supreme Court has the power to consider the new issues and new evidence presented by Nelson. CPLR 5015 (a) states, in part, that:
"The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person * * * upon the ground of * * *
"2. newly-discovered evidence”.
An "interested person” includes individuals who were not parties to the original action. (Oppenheimer v Westcott, 47 NY2d 595, 602.) " 'To seek relief from a judgment or order, all that is necessary is that some legitimate interest of the moving party will be served and that judicial assistance will avoid injustice’ (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.15, p 50-252).” (Supra, at 602.)
Ordinarily, such a motion is addressed to the Judge who rendered the decision. However, in this circumstance, two factors dictate that the motion be addressed to this court. First, Nelson’s claim is not directly made in the action in which the order was rendered. He has not moved to intervene there, but only in the action on the note. Since Justice Inglehart is not involved in the second matter, he would have no jurisdiction.
The second factor is the advent of the Individual Assignment System in the New York trial courts. The Individual Assignment System "provides for the continuous supervision of each action and proceeding by a single judge.” (Uniform Rules for Trial Cts, 22 NYCRR 202.3 [a].) Here, both the Fraccola action and the action on the note have been assigned to this court. Even if the two actions are viewed as a single matter, that matter is assigned here, and all related matters are also. Finally, it should be noted that a motion under CPLR 5015 must be venued in the county where the action was commenced. (Brenner v Arterial Plaza, 29 AD2d 815.) *911 Since Justice Inglehart is no longer assigned to Oneida County, the interests of justice require that this court resolve the new issues presented.
COLLATERAL ESTOPPEL AND RES JUDICATA
It is further argued that the Comptroller is estopped from raising any issue about the note involved in the Fraccola action. At the same time, he is also barred from attacking the local status of the Water Board in both actions.
As a general proposition, a public official cannot be estopped from the performance of a duty. (Matter of Whalen v Corsi, 201 Misc 39, affd 279 App Div 113; Matter of Halls v Van Buren, 46 Misc 2d 703; Matter of Finck v Bliss, 205 Misc 775.)
However, the Board of Water Supply asserts that estoppel should apply here because the same issues were addressed in the Fraccola case and in other cases. "[E]stoppel * * * applies to issues rather than to whole claims or defenses * * * The estoppel inquiry is whether an issue involved [in the second case] was disposed of [in the first case], and whether the party sought to be bound with it here was a party there, [and] had a fair chance to have the issue determined in his favor there, and failed.” (Siegel, NY Prac § 457, at 604-605.)
The Court of Appeals has determined that the doctrine will be applied if there has been a "full [and fair] opportunity to litigate a particular issue”. (Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 69; B. R. DeWitt, Inc. v Hall, 19 NY2d 141.) The criteria used in reaching that conclusion are: vigorous opposition "and opportunity to be heard” (B. R. DeWitt, Inc. v Hall, supra, at 148): the motion to dismiss was unopposed and the Comptroller had no opportunity to be heard because he was not a party.
"[A]variability of new evidence” (Schwartz v Public Adm’r of County of Bronx, supra, at 72) and the similarity of issues (B. R. DeWitt, Inc. v Hall, supra, at 148): the crux of Nelson’s argument is that the local law establishing the Water Board was not submitted to mandatory referendum as required by section 23 of the Municipal Home Rule Law (see, former City Home Rule Law § 15). This evidence was not made known to the Fraccola court on the motion to dismiss or any other court. None of the litigants was even aware of its existence. Counsel for the Comptroller states his client discovered the deficiency long after the determination in this case and the *912 decisions in all previous cases. No court has ever addressed this question.
Application of the doctrine of collateral estoppel is inappropriate because none of the essential criteria are established.
STARE DECISIS AND STATUTE OF LIMITATIONS
The parties contend that since other courts have considered the Water Board’s legal status, those conclusions should be binding as a matter of public policy. There are at least three cases, including this one, where there can be an implied finding that the Board of Water Supply is legally constituted and is a separate legal entity from the City of Utica. (Gennis v Kirshstein, index No. 77-1758 [1977]; Oberman v City of Utica, index No. 78-44 [1978]; Fraccola v City of Utica Bd. of Water Supply, 70 AD2d 768; Fraccola v City of Utica [same case, different issues], 77 AD2d 161.) Thus, the doctrine of stare decisis precludes further action.
There is a distinction made between the doctrine of res judicata or collateral estoppel and stare decisis. If the collateral estoppel criteria are met, the doctrine must be applied even if the decision reached was erroneous. Stare decisis only applies if the conclusiveness of the first decision directly impacts the second. Under certain conditions the litigant may attack the precedent — effect of the first decision — "the stare decisis doctrine is an elastic one allowing the litigant to challenge the soundness of an outstanding decision”. (People ex rel. Watchtower Bible & Tract Socy. v Haring, 286 App Div 676, 683.)
Judge Halpern (supra, at 683) reasoned that there was little risk of repetition because a defeated litigant would not normally relitigate the same set of facts. When the facts are clearly different or new evidence has been added, the court must analyze the previous decision to determine the force and effect it should be given. (Supra, at 682.)
Such a position becomes more persuasive when a public policy issue is before the court. Since policy mandates the statutory performance of public officials, extreme caution should be exercised before a court approves a violation of such a duty on a stare decisis ground. Previous determinations would have no relevance or binding effect as authority for continued statutory violations, if that issue was not addressed by the court.
The Statute of Limitations argument is also not appropriate *913 for the same issue — the failure of a municipality to operate within its statutory limitations. The reasoning is that each day a municipality operates illegally becomes a new violation of the statute. " '[N]o period of limitation at all is applicable to an action * * * in cases involving a continuing harm, such as the application of an invalid statute’ (1 Weinstein-KornMiller, NY Civ Prac j| 213.02).” (Amerada Hess Corp. v Acampora, 109 AD2d 719, 722.)
In similar cases where all limitation periods had expired, competent counsel never raised the time issue. (Murmer v Board of Appeals, 98 Misc 2d 1068; Matter of Harwood v Cornelius, 21 AD2d 961.) It is reasonable to conclude that it does not apply.
TIMELINESS OF THE MOTION FOR INTERVENTION
Both CPLR 1012 (intervention as of right) and CPLR 1013 (intervention by permission) require a "timely” motion. The parties contend that Comptroller Nelson’s motion, made after settlement of the Fraccola action for damages, is untimely. This contention misconstrues both the basis of the motion and the nature of the action.
The motion for intervention is made in the action to enforce the note and was made almost immediately after service of the papers. The interests of the Comptroller were not directly at issue until this matter was commenced.
In Matter of Stanford Assocs. v Board of Assessors (39 AD2d 800, lv denied 31 NY2d 643), the court allowed a school district to intervene in a tax assessment review proceeding after it gained "knowledge of the order of compromise and settlement”. Here, Comptroller Nelson was not actually involved in the controversy until after the settlement was reached, and he was asked to authorize payment of the note. Under these circumstances, the motion is "timely”.
THE LEGAL POSITION OF THE BOARD OF WATER SUPPLY
The City of Utica operates under a charter form of government. The present charger took effect in 1922, and there have been several efforts to reform the charter through designated Charter Revision Commissions. All attempts to put into effect a revised charter have been defeated at the polls. There have also been some portions of the charter which have been revised by voter approval, but there has been no success in *914 achieving voter approval for the present status of the Board of Water Supply, directly or indirectly.
Under its present structure, the Board of Water Supply is an anomalous institution. The local law which created it did not give a label to the structure except as "a board or commission”. It has broad comprehensive powers which intrude into the authority of many elective officials and usurp other functions which are reserved exclusively to various elected officials.
Because of its organization, size and structure, the City of Utica derives its powers directly through the Second Class Cities Law. These powers are consistent with the New York State Constitution and the Municipal Home Rule Law (formerly the City Home Rule Law).
Judge Fuld in Seaman v Fedourich (16 NY2d 94, 101) established the framework for legal discussion in this case when he observed, "It is axiomatic that local governmental units are creations of, and exercise only those powers delegated to them by, the State (N. Y. Const., art. IX, §§ 1, 2; Municipal Home Rule Law, §§ 10, 11)”.
As Judge Fuld has precisely stated, the issue is basic. In the matter before the court, the facts are undisputed — a local law was passed which took away the powers of certain elected officials without complying with the mandatory referendum provisions of Municipal Home Rule Law § 23 (2).
This is a procedural step which the State Legislature mandated to effect so radical a variance in the enabling legislation governing the City of Utica. In these actions, the parties contend, inter alia, that this failure is a mere irregularity and has been waived by the passage of time and practice. A similar argument was made in Keeney v Village of LeRoy (22 AD2d 159). Judge Bastow disposed of that argument when he stated the long-term public policy of the State of New York (at 163) as follows: "We conclude that these several omissions and defects * * * were more than mere irregularities. The procedural steps required by the enabling acts of municipalities are regarded as mandatory and failure to comply therewith invalidates the enactment”.
In that case, the violation was the failure to enter the ordinance in the minute book as required by the Village Law. This is a far cry from the instant case where the procedural failure led to a wholesale usurpation of the power of elected officials and the creation of an organization which does not *915 appear to be subject to any legal authority. This becomes especially repugnant when it also appears that there is little accountability to the duly elected officials or the electorate.
The operation of the Board of Water Supply for several years, ostensibly within the authority of the local law, cannot erase the illegality in its formation. The legislative intent clearly stated under the Municipal Home Rule Law was not followed. In Matter of Hines v La Guardia (293 NY 207), it was contended that the issue could not be raised since the parties had for a long time followed a consistent pattern of administrative practice which was a departure from the clear intention of the Civil Service Law. In refusing to accept that solution, the court simply stated (at 216): "Administrative practice may not thwart a statute the purposes of which are as clear as those here involved”. (Emphasis supplied.)
In Auer v Dyson (110 Misc 2d 943), the State Power Authority argued that even if its actions exceeded its statutory authority, they were proper because of usage. The argument was rejected. (See also, Edenwald Contr. Co. v City of New York, 86 Misc 2d 711.)
Although parts of the local law are clearly illegal, there are other parts which may be upheld. In reaching this conclusion, the court is interpreting the applicable sections in a manner which will sustain to the greatest extent the validity of the local law (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 96, 97, 150). If there are general and specific provisions, the specific should prevail over the general. (People v Mobil Oil Corp., 48 NY2d 192, 200.) Section 23 of the Municipal Home Rule Law must be considered a specific statute by definition.
The local law purports to create a Board of Water Supply instead of a Superintendent of Water Works appointed by the Commissioner of Public Works as authorized in section 94 of the Second Class Cities Law.
Under section 11 of the Second Class Cities Law, the designated elective officers are the Mayor, Comptroller, Treasurer, President of the Common Council and four Assessors. The Commissioner of Public Works and the Superintendent of Water Works are not elective officers. Thus, a transfer of power from them to the Water Board is permissible without a referendum. To the extent the local law attempted to transfer the powers of those officials to the Board of Water Supply, it is valid.
It is necessary to compare the provisions of the local laws *916 with the following provisions of the Second Class Cities Law: §§ 50 and 54 (Mayor), 63 through 67 (Comptroller), 68 through 70 (Treasurer), 71, 73, 74, 75, 76 (Board of Estimate and Apportionment), and 79, 120 and 125 (Board of Contract and Supply). The Board is properly created since the Mayor retains the appointing authority he had over the Commissioner of Public Works. However, the requirement that he appoint members of both political parties is not valid since it curtails the Mayor’s power.
The Board may take exclusive managerial control over all property and facilities except revenue. It is no conflict for revenue to be kept by the Treasurer in the separate accounts designated in the local law, but its use must be approved by the Board of Estimate and Apportionment subject to the provisions of the State Constitution, the Local Finance Law and the Second Class Cities Law. The Board may keep books in which are entered records of its accounts, kept by the Treasurer, but it may not authorize signatures for checks or drafts. Such checks are to be issued by the Treasurer in accordance with the usual procedure. A requirement that payments on Board obligations be made from a self-supporting revenue system is acceptable, but payments can only be made by the Treasurer as authorized by the Comptroller and Board of Estimate and Apportionment. Similarly, the provisions for insurance as set forth in the local law are also subject to Board of Estimate and Apportionment review, and it must approve the disposition of any insurance proceeds.
The local law gives the Board power to appoint an attorney and other personnel, whose reasonable compensation is to be determined by the Board, subject to Board of Estimate and Apportionment approval. To the extent that this provision is interpreted to require the Board of Estimate and Apportionment to establish the position and the compensation, it is consistent with the Second Class Cities Law.
The Board may recommend rates, fees, tolls, charges and revisions, subject to the approval of the Board of Estimate and Apportionment, but may not contract for indebtedness by any means for any purpose. Thus, the promissory note executed by the Board in action number 1 is invalid and not enforceable since it is an indebtedness requiring approval of the Common Council and Board of Estimate and Apportionment. (See, NY Const, art VIII, §§ 2, 3; Local Finance Law § 2.00 [4] [b] [3]; § 11.00 [a] [33]; [b], [c]; § 176.00; Utica City Charter, art III, *917 §§ 14-1, 14-1.1, 14-2, 14-4.1, 14-6, 14-7, 14-8; see also, Village of Fort Edward v Fish, 156 NY 363.)
All other provisions of the local laws shall continue in full force and effect unless it can be shown that to do so would create a violation of the Second Class Cities Law or some other State statute.

 "[A] local law shall be subject to mandatory referendum if it * * * "(f) Abolishes, transfers or curtails any power of an elective officer.”