866 F.2d 53
 12 Fed.R.Serv.3d 1271, 51 Ed. Law Rep. 441
 Mishael MADUAKOLAM, Plaintiff-Appellant,
v.
COLUMBIA UNIVERSITY, a private educational institution,
Board of Trustees of Columbia University, Michael I. Sovern,
President of the University, sued in his official capacity,
Columbia University School of Engineering and Applied
Science, Peter Likins, individually and officially as the
former Dean of the School of Engineering and Applied
Science, Robert A. Gross, individually and officially as
Dean of the School of Engineering and Applied Science,
Maciej P. Bieniek, individually and officially as Professor
and former Chairman in the Department of Civil Engineering
and Engineering Mechanics, Morton B. Friedman, individually
and officially as Professor and Chairman in the Department
of Civil Engineering and Engineering Mechanics, Masanobu
Shinozuka, individually and as Chairman of the Doctoral
Qualifying Examination Committee, Professors Gautam
Dasgupta, Frank L. DiMaggio, Norris Stubbs and Rene B.
Testa, individually and officially as professors in the
School of Engineering and Applied Science, Defendants-Appellees.
 No. 287, Docket 88-7543.
 United States Court of Appeals,
Second Circuit.
 Submitted Nov. 7, 1988.
Decided Jan. 23, 1989.
 
 Mishael Maduakolam, New York City, pro se.
 Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants-appellees.
 Before VAN GRAAFEILAND and ALTIMARI, Circuit Judges, and MUKASEY, District Judge.*
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Mishael Maduakolam, pro se, appeals from a judgment of the United States District Court for the Southern District of New York (Edelstein, J.), denying his motion under Fed.R.Civ.P. 60(b) to vacate the prior dismissal of his case, and granting defendants-appellees' cross-motion for attorney's fees pursuant to Fed.R.Civ.P. 11. In his complaint filed on September 10, 1982, plaintiff, then represented by an attorney, sought money damages and declaratory and injunctive relief under 42 U.S.C. Secs. 1981 and 1985 to redress alleged violations by Columbia University. Maduakolam, who is Black and of African nationality, alleged that certain professors in the Columbia University School of Engineering and Applied Science discriminated against him by reason of his race and ethnicity in administering his doctoral qualifying examinations. Four years after the dismissal of his action in the district court for want of prosecution, Maduakolam moved to "reopen [the] case." Defendant claimed that plaintiff was continuing to pursue the action "vexatiously and in bad faith," and cross-moved for attorney's fees under Rule 11. In its order dated June 2, 1988, the district court denied plaintiff's motion and granted defendants' cross-motion. For the reasons set forth below, we affirm the judgment of the district court denying plaintiff's motion under Rule 60(b), and we reverse the imposition of attorney's fees.
 
 BACKGROUND
 
 2
 Plaintiff Mishael Maduakolam, a Nigerian national residing in the United States, attended Columbia University ("Columbia") as a doctoral candidate in the School of Engineering and Applied Science from the Fall of 1977 through September of 1979. In order to obtain a doctorate in Civil Engineering, Columbia students were required to sit for a qualifying examination. A candidate was required to receive a passing grade on four of six exam questions submitted and graded by various professors in the School of Engineering. Maduakolam took the qualifying examination in January 1979. He was graded a "Pass" on three questions. However, he received an "F+" on the question graded by defendant Bieniek.
 
 
 3
 Maduakolam protested the failing score to Bieniek. Columbia gave him the option of retaking the qualifying exam. In September 1979, he retook the exam, again receiving three passing grades, and an "F+" from Bieniek. This time, Maduakolam sought an independent review of his grade from defendant Shinozuka, Chairman of the Doctoral Qualifying Examination Committee. Shinozuka appointed defendants DiMaggio and Testa to conduct the review. The failing grade was subsequently upheld.
 
 
 4
 Maduakolam commenced the underlying action for monetary, declaratory and injunctive relief in September 1982, stating claims under 42 U.S.C. Secs. 1981 and 1985, and a pendent state law contract claim. For his first cause of action, plaintiff alleged that Columbia breached an "implied contract" to provide education and services leading to a doctoral degree in engineering, by terminating him upon "arbitrary, malicious, unfair and inequitable terms." In support of his discrimination claims, he alleged that defendant Bieniek "consistently graded African students taking the qualifying exam for the first time with failing scores on every exam question he has graded [from] 1972 until 1982." He alleged that, in contrast, Bieniek "never failed a white doctoral candidate." Citing similar instances of allegedly improper conduct, Maduakolam claimed the graduate program was administered in a racially biased manner.
 
 
 5
 Following a pretrial conference at which a discovery schedule was prepared, Maduakolam left the United States for Nigeria. Attorney Lawrence S. Cumberbatch moved in the district court to be withdrawn as Maduakolam's counsel. Citing Maduakolam's failure to appear at two scheduled depositions, Columbia cross-moved for dismissal of the action. By order dated April 21, 1983, the district court dismissed the complaint for want of prosecution. The court denied Cumberbatch's motion to withdraw as counsel. Notwithstanding the denial of his motion, Cumberbatch considered that his status as plaintiff's attorney ceased as of the dismissal of the action. Upon his return from Nigeria in early 1985, Maduakolam was informed by Cumberbatch that the case had been dismissed. Thereafter, he proceeded pro se.
 
 
 6
 Sometime after his return to the United States, Maduakolam sought to take an external qualifying examination in order to be licensed as an engineer. In order to take the examination, he needed supporting signatures from his former Columbia professors, including Bieniek. His requests for these signatures were refused. Maduakolam requested mediation of the dispute from Columbia's Office of Equal Opportunity, and Morton Friedman, Chairman of Columbia's Department of Civil Engineering. Neither Friedman nor the Office of Equal Opportunity responded to these requests.
 
 
 7
 On November 18, 1986, Maduakolam filed suit in the Civil Court of New York, naming the "Accounts Department of Columbia University" as the defendant. He sought a tuition refund in the amount of $17,664.00, claiming that his graduate program had been "incongruously administered." Columbia advanced counterclaims, the nature of which are not relevant to this appeal. After Maduakolam failed to appear at a scheduled conference in Civil Court, a default judgment was entered against him on March 3, 1987. A motion to set aside the default judgment was denied when Maduakolam failed to appear on the return date.
 
 
 8
 On April 21, 1987, four years to the day from the order dismissing his federal action, Maduakolam submitted a motion in the district court to "reopen [his] case." Columbia cross-moved for sanctions and attorney's fees under Fed.R.Civ.P. 11. The court, sua sponte, treated Maduakolam's motion as one made pursuant to Fed.R.Civ.P. 60(b)(1). Noting that Maduakolam had delayed for four years in seeking relief from the 1983 order, and finding no reason to excuse the delay, the court denied the 60(b)(1) motion. The court also concluded that the motion was "frivolous and vexatious." In reaching this conclusion, the court took note of Maduakolam's Civil Court action and the accompanying default judgment. Accordingly, it awarded Columbia attorney's fees in the amount of $3,243.50.
 
 
 9
 On appeal, Maduakolam contends that his delay was excusable because of the "ethical problems" involved in pursuing litigation while trying to secure signatures in support of his licensing exam. He also contends that the award of attorney's fees against him was inequitable given the expenses he incurred in unsuccessfully pursuing an engineering degree from Columbia.
 
 DISCUSSION
 
 10
 We review the district court's decision regarding the motion under Fed.R.Civ.P. 60(b) by determining whether the court abused its discretion. See Kotlicky v. United States Fidelity and Guaranty Co., 817 F.2d 6, 8 (2d Cir.1987); In re Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir.1981). Relief from a final judgment or order may be had for reasons of:
 
 
 11
 (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial ...; (3) fraud[,] ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied ... or (6) any other reason justifying relief from the operation of the judgment.
 
 
 12
 Fed.R.Civ.P. 60(b). Only 60(b)(1 or 60(b)(6) provide a colorable basis for relief in this case.
 
 
 13
 The court may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable. See Liljeberg v. Health Services Acquisition Corp., --- U.S. ----, ----, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988); Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir.1986). The only grounds asserted by Maduakolam for the four-year delay in seeking relief from the judgment were the necessity of returning to Nigeria, and, at least as stated on appeal, his "ethical problem" with pursuing the litigation. In other words, he offers grounds which purport to be "excusable neglect." Thus, 60(b)(6) cannot provide relief, because the grounds stated are covered under 60(b)(1).
 
 
 14
 The rule itself states that motions under 60(b)(1) must be made "not more than one year" after entry of the judgment complained of. Fed.R.Civ.P. 60(b); See Klapprott v. United States, 335 U.S. 601, 613, 69 S.Ct. 384, 389, 93 L.Ed. 266, judgment modified, 336 U.S. 942 (1949). Maduakolam's motion is clearly untimely. The situation presented here is not analogous to that found in Klapprott, wherein petitioner brought a motion to set aside a default judgment more than four years after entry of the judgment. Contending that petitioner had at most shown "excusable neglect" in not seeking to overturn the judgment earlier, the government alleged the applicability of the one-year limitations period. However, in Klapprott, the petitioner had been wrongfully imprisoned. He therefore was unable to respond to charges against him in denaturalization proceedings, which led to entry of the default judgment. His failure to respond was entirely involuntary, under circumstances which could not be characterized as mere "excusable neglect." Accordingly, the Court held that 60(b)(6) ought to have applied. The one-year period thus was held to have been inapplicable.
 
 
 15
 In this case, Maduakolam's failure to appear at two scheduled depositions and his reluctance to proceed against Columbia were solely matters of convenience to him. His prolonged absence from the jurisdiction of the court does not provide a reasonable excuse for being dilatory. Ample notice of the pending depositions was given, and there is no question that notice was received by his attorney. Maduakolam's return to Nigeria for "business and personal reasons" did not prevent him from leaving a forwarding address or otherwise staying in contact with his counsel to assure that he received and responded to the court-ordered discovery schedule. Thus, any inability to receive actual notice of the proceedings was of plaintiff's own doing. Cf. Kotlicky, 817 F.2d at 9 (on timely 60(b) motion, short notice of deposition and involuntary failure to appear were excusable neglect). In light of the foregoing, we find the court's denial of Rule 60(b) relief was not an abuse of discretion.
 
 
 16
 Notwithstanding the proper denial of the 60(b) motion, we do not believe Rule 11 sanctions are warranted here. Nothing in the record indicates that Maduakolam proceeded in bad faith or from a desire to harass the defendants. Cf. In re Martin-Trigona, 795 F.2d 9, 10 (2d Cir.1986) (per curiam) (noting petitioner's propensity for instituting "vexatious and often scurrilous" legal actions).
 
 
 17
 While it is true that Rule 11 applies both to represented and pro se litigants, the court may consider the special circumstances of litigants who are untutored in the law. See Fed.R.Civ.P. 11 advisory committee's notes. Compare Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (pro se complainant's pleadings held to less stringent standards than pleadings drafted by attorneys). There is nothing in the record to indicate that Maduakolam knew or should have known that his "motion to reopen case" was time-barred. Under the circumstances of this case, sanctions should not have been imposed. Cf. Rutherford v. Exxon Co., U.S.A., 855 F.2d 1141, 1148 n. 3 (5th Cir.1988) (clearly time-barred appeal was not sufficiently egregious circumstance to impose sanctions under Fed.R.App.P. 38).
 
 CONCLUSION
 
 18
 Plaintiff-appellant's motion for relief from judgment was filed out of time. We therefore find no abuse of the court's discretion to deny the motion under 60(b)(1). However, we do not believe that sanctions are warranted on the facts of this case. Accordingly, the judgment of the district court is affirmed in part, reversed in part, and remanded with instructions to vacate so much of the judgment as awards defendants-appellees attorney's fees in the amount of $3,243.50.
 
 
 
 *
 Honorable Michael B. Mukasey, United States District Court for the Southern District of New York, sitting by designation