Richard SIMPSON, Plaintiff,

v.

PUTNAM COUNTY NATIONAL BANK OF CARMEL, Ryder Trust, Wayne Ryder, John A. Porco, P.C., John A Porco, Curtiss, Leibell & Shilling, P.C. and William Shilling, Defendants.

No. 97 CIV. 6403(BDP).

United States District Court, S.D. New York.

Aug. 14, 2000.

Leonard Zack, Leonard Zack & Associates, Fensterstock & Partners LLP, New York City, for Plaintiff.

Daniel A. Seymour, Bank, Sheer, Servino & Seymour, White Plains, NY, for Defendants.

### MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Richard Simpson ("Simpson") commenced this action on August 28, 1997, asserting claims against defendants under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 *et seq.*, and under state law for fraud, tortious interference with contract, intentional infliction of emotional distress, breach of contract, and civil conspiracy. This Court dismissed the action in a Memorandum Decision and Order dated September 22, 1998 on the ground that it was barred by the *Rooker–Feldman* doc-

trine, noting in dicta that Simpson's RICO claims were time-barred. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

Currently before this Court is defendants' motion for sanctions against Simpson and his former attorneys Clifford James ("James") and Professor Ralph Michael Stein ("Professor Stein"), pursuant to Fed.R.Civ.P. Rule 11 and 28 U.S.C. § 1927. This Court has thoroughly considered all of defendants' arguments and, for the reasons stated below, defendants' motion is denied.

### BACKGROUND

I. The Complaint

While familiarity with the facts and with this Court's prior Memorandum Decision is assumed, we briefly summarize those pertinent to defendants' motion for sanctions. Simpson commenced this action on August 28, 1997 against the Putnam County National Bank of Carmel (the "Bank"), Wayne Ryder ("Ryder"), Ryder Trust, John A. Porco ("Porco"), John A. Porco, P.C., Curtiss, Leibell and Shilling, P.C. and William Shilling, alleging that these defendants participated in a fraudulent conspiracy to deprive plaintiff of rent from one of his tenants, Angelo Velardo/Majag Food Corp. ("Velardo"), so that the plaintiff would be forced to default on a mortgage with the Bank. Plaintiff alleged that the bank would then foreclose on the properties and arrange for one of the properties to be sold at bargain prices to Velardo.[1]

1. The complaint referred to what Simpson terms the "Velardo conspiracy," which concerned two leases that he entered into on October 25, 1990 with Majag Food Corporation ("Majag"), whose stockholders and controlling principals were Angelo Velardo and his wife, Maria Velardo. One of the two leases was a fifteen-year lease for the IGA supermarket on parcel I; the second was a ten-year lease for equipment, stock in trade, fixtures, use of the IGA name, and goodwill. In addition, on October 29, 1990, Angelo Velardo gave Simpson a promissory note for $40,000 in connection with the transaction. Payment on the note was due on February 26, 1991.

In January of 1989, Simpson and his wife executed a mortgage with the Putnam Bank as mortgagee. The Simpsons borrowed $750,000 from the Bank and mortgaged five parcels of commercial and residential property. In the latter part of 1989 Simpson defaulted on the mortgage. He was subsequently afforded five forbearance opportunities and, when he failed to honor them, the Bank commenced foreclosure proceedings which resulted in a final judgment of foreclosure entered by the Putnam County Supreme Court on April 10, 1991. Simpson appealed the order denying the motion to vacate the judgment of foreclosure. On May 2, 1994, the Appellate Division affirmed the order. *Putnam County Nat'l Bank of Carmel v. Simpson*, 204 A.D.2d 297, 614 N.Y.S.2d 149 (2d Dept.1994).

On April 9, 1992, Simpson commenced proceedings pursuant to Chapter 11 in the United States Bankruptcy Court for the Southern District of New York and, pursuant to 11 U.S.C. § 362, the pending foreclosure action was subject to the statute's automatic stay. Simpson, however, remained obligated to make his monthly mortgage payments to the Bank.

On November 18, 1992, the Bank moved in Bankruptcy Court to terminate the stay for nonpayment of taxes, insurance premiums, and mortgage payments. On February 1, 1993, the Bankruptcy Court granted the Bank's motion. The Bank resumed foreclosure and sale proceedings in Putnam County State Court, and the properties were sold to the Bank at a foreclosure sale on or about March 15, 1993.

Throughout the foreclosure proceedings, and his personal bankruptcy proceedings, plaintiff alleged that he was unable to meet his commitments due to defendants' fraudulent conduct. Plaintiff, proceeding *pro se*, was unsuccessful in these as well as in earlier litigations involving the same defendants.

On September 22, 1998, relatively early in the litigation, this Court dismissed Simpson's complaint on grounds that the *Rooker–Feldman* doctrine prevented this Court from, in effect, functioning as a Court of Appeals with respect to matters previously litigated in state court. As an alternative ground for dismissal, we observed that plaintiff's civil RICO claims were barred by the applicable four-year statute of limitations. Further, because *Rooker–Feldman* applied, this Court denied Simpson's cross motion for limited discovery and for leave to amend his complaint. By a separate judgment dated September 24, 1998, the complaint was dismissed.

## II. Pre–Filing Investigation

Professor Stein and James (collectively Simpson's "former lawyers") first learned of Simpson's potential claims from Marla B. Rubin ("Rubin"), a lawyer who had been one of James's partners at a former firm. James first learned of the potential claims in August of 1997, and Stein first learned of them in July of that year. James, in responsive papers, avers that he and Stein gathered and reviewed documents from Simpson and others, performed legal research on issues including RICO, fraudulent concealment and preclusion, and met several times with Simpson. Stein and James then investigated and analyzed the claims, concluding that they were non-frivolous and that they were not precluded by Simpson's previous *pro se* litigation. The documents reviewed before filing the complaint included:

- copies of documents relating to the properties, and the various forbearance agreements entered into by Simpson and the Bank;

- copies of the leases Simpson granted to Majag, and a promissory note issued by Velardo to the order of Simpson;

- copies of papers (including affidavits of Simpson and others) and memoranda of law filed in the foreclosure action in state Supreme Court;

- copies of papers in the action in which the alleged rights of Majag not to pay

rent on the leases and Velardo's alleged right not to satisfy a promissory note to the order of Simpson, were determined; and

- copies of papers in the bankruptcy proceeding brought by Simpson in his effort to avoid foreclosure.

Also among the documents reviewed by James and Stein was an April 8, 1997 affidavit submitted by Velardo describing details of the alleged conspiracy. For example, Velardo swore under oath that his lawyer had told Velardo that he had spoken to representatives of the Bank, and that those representatives had agreed that if Velardo stopped paying rent on the properties, the bank representatives would see to it that Velardo obtained one or more of the properties at or after foreclosure. Velardo confirmed the substance of the affidavit during separate interviews conducted in person by Rubin, and provided other information supporting the existence of the alleged conspiracy.

Other information considered by Stein and James in their investigation included a potential conflict of interest of the judicial officer who oversaw the foreclosure proceedings and entered the final judgment of foreclosure. While presiding over cases in which Simpson and the Bank were parties, the judicial officer, according to Simpson's lawyers, owned a significant number of shares of Bank stock in a fiduciary capacity and successfully negotiated a sale of those shares of stock back to the Bank at a highly favorable price ($300 to $500 more per share than other such sales at or around the same time). This potential conflict, according to Stein and James, was not disclosed by the Bank, the Bank's attorneys, or the judicial officer.

Simpson also obtained information which led him to believe that a member of the Shilling firm (which represented Majag/Velardo in the consolidated action before the judicial officer concerning Majag's failure to pay rent, and Velardo's failure to honor his promissory note, to Simpson) had a current investment with the judicial officer, which also was not disclosed by the Shilling firm.

Defendants have not disputed that they were negotiating with the judicial officer to purchase, and did purchase, the Bank stock he held as a fiduciary while he presided over litigation to which the Bank and Simpson were parties. The Shilling firm has not denied that one of its lawyers and the judicial officer were joint investors while he presided over litigation to which Simpson was a party and in which Shilling was counsel to a party adverse to Simpson. Their only meaningful response is that Simpson had incorrectly identified the investment as one involving real estate.

Not included in the documents reviewed by Stein and James were Simpson's two June 19, 1992 affidavits which Simpson failed to turn over to his former lawyers and which eviscerated the argument that the statute of limitations had been tolled due to fraudulent concealment. Simpson's former lawyers did not become aware of these affidavits until after the complaint was filed. James, however, asked Simpson before filing the complaint whether he had made the identical allegations that they intended to make in the complaint in any of the previous litigations in state court or bankruptcy court and Simpson answered that he had not done so. He also told James that he had supplied documents alleging claims similar to those contemplated in the complaint. A competent lawyer reviewing the June 1992 affidavits would have concluded that Simpson's RICO claims were time-barred, but, as noted, Simpson did not supply them to his lawyers.

The defendants advance several arguments in support of the imposition of sanctions. They argue *inter alia* that Simpson brought actions against them asserting the same claims in state and federal court on at least seven occasions prior to the instant lawsuit and failed each time. They argue that despite his lack of success in the earlier litigation, Simpson brought this ac-

tion re-asserting the same allegations, "which even if true would not have met the RICO requirements of predicate acts and which would have been barred by the statute of limitations." Memorandum of Law of Defendants in Support of Defendants' Motion for Sanctions at 1. They claim that Simpson's former lawyers engaged in sanctionable conduct in that they should not have relied on Simpson to provide them with a complete record of earlier court filings and that they should have become aware of the two June 1992 affidavits through independent investigation before filing the complaint. Specifically, defendants assert further:

> the personal and professional attacks levied by Mr. James and Professor Stein were not only directly contrary to the professionalism expected of an attorney, but were made without any basis, let alone a good faith basis. Rather than properly investigating the facts and circumstances prior to commencing suit, and continuing with the suit after being appraised of the situations, the plaintiff and his counsel recklessly sought to destroy the reputations of [defendants].

## DISCUSSION

### I. Legal Standards

A district court may impose sanctions pursuant to Rule 11, its inherent power and 28 U.S.C. § 1927. *In re Ames Dep't Stores, Inc.,* 76 F.3d 66, 70 (2d Cir.1996). Courts have found failure to satisfy the statutory requirements of a RICO claim sanctionable activity. *See, e.g., O'Malley v. New York City Transit Authority,* 896 F.2d 704 (2d Cir.1990) (imposing sanctions for filing frivolous RICO action); *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 660 (S.D.N.Y.1996); *Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114, 123 (S.D.N.Y. 1993) (imposing sanctions where "even a cursory investigation into the pleading requirements for RICO would have revealed the inadequacy of [plaintiff's] RICO pleading"); *McLoughlin v. Altman,* No. 92 CIV.

8106(KMW), 1995 WL 640770, at *2 (S.D.N.Y. Oct.31, 1995).

### A. Rule 11

Rule 11 provides in pertinent part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed.R.Civ.P. 11.

Rule 11 exists in part to protect defendants and the court from wasteful, frivolous and harassing lawsuits, and provides for sanctions as a deterrent. *Katzman,*

167 F.R.D. at 660 (citing *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990)). Rule 11's deterrence value is particularly important in the RICO context, as the commencement of a civil RICO action is highly likely to have a stigmatizing effect on those named as defendants. *Id.*

Attorneys have "an affirmative duty ... to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The 1993 Advisory Committee Note explains that Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed.R.Civ.P. 11 Advisory Committee Note to 1993 amendments; *see also Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir.2000); *Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157, 166 (2d Cir.1999).

Our Court of Appeals has cautioned that an award of sanctions is permitted only if "it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway Constr. Corp.*, 762 F.2d at 254. As our Circuit instructed in *Eastway*, "[c]ourts must strive to avoid the wisdom of hindsight ... and any and all doubts must be resolved in favor of the signer." *Id.*

Rule 11 also applies to *pro se* plaintiffs, as it covers anyone who signs a pleading, motion, or other paper. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Although pleadings filed by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), all litigants, including *pro ses*, have an obligation to comply with court orders and with the Federal Rules of Civil Procedure. *See McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988); *see also Vitale v. First Fidelity Leasing Group, Inc.*, 187 F.R.D. 445, 448 (D.Conn.1999); *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465, 505 (E.D.N.Y.1998) (imposing Rule 11 sanctions on *pro se* plaintiff and noting that the Court had previously explicitly warned the plaintiff of the possibility of sanctions "for frivolous and malicious litigation").

## II. Former Attorneys' Conduct Does Not Call for Sanctions

Defendants' arguments for sanctions are based on litigation in state court principally between Simpson, acting *pro se*, and the Bank, that took place before the action at bar was commenced. The Bank defendants argue that the earlier, state court litigation requires a finding by this Court that this action was not well grounded in fact or law and that the complaint was interposed for an improper purpose. However, in light of the evidence discovered after completion of the state court litigation, lending support to Simpson's factual contentions and legal arguments, as well as other circumstances, it was objectively reasonable for Simpson's former attorneys to file the August 28, 1997 complaint. This evidence included the Velardo affidavit, and information suggesting the judicial officer's conflict of interest. The new evidence suggested that other mortgagors of the Bank had had similar experiences, both with the Bank and with a perceived lack of impartiality in the same judicial forum.

The arguments advanced by Stein and James as to why the complaint had merit were weak and, as we have seen, were ultimately unsuccessful, but this conclusion is not dispositive on defendants' sanctions motion. Their arguments that this action is not precluded under the principles of *res judicata*, collateral estoppel and the *Rooker–Feldman* doctrine, are not particularly

persuasive, but the record herein does not establish that they were either frivolous or asserted after an investigation that, in the circumstances presented to James and Stein, was sufficiently objectively unreasonable so as to merit sanctions. *See Schwartz v. Public Administrator of County of Bronx,* 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725 (1969) (factors to be considered in determining whether issue preclusion applies include the forum of the prior litigation, the competence and experience of counsel, and the availability of new evidence).

With regard to the unearthing of new evidence, our Circuit has stated:

> If significant new evidence is uncovered subsequent to the proceeding said to result in an estoppel of the present action, then it cannot be found that a party was afforded a full and fair opportunity to present his case in the absence of that evidence. *See Hampton Heights Dev. Corp. v. Board of Water Supply of City of Utica,* 136 Misc.2d 906, 911, 519 N.Y.S.2d 438, 443 (Sup.Ct.1987), *aff'd as modified,* 140 A.D.2d 958, 531 N.Y.S.2d 421 (4th Dep't 1988).

*Khandhar v. Elfenbein,* 943 F.2d 244, 249 (2d Cir.1991).

### A. Pre-filing Investigation

We also find that it was not frivolous and was objectively reasonable for Simpson's former attorneys to oppose the statute of limitations defense by arguing that the statutes of limitation were tolled due to the Bank defendants' fraudulent concealment of the new evidence supporting Simpson's new claims. In light of the evidence of which they were aware, it was objectively reasonable for Simpson's former counsel to argue that the action was not time-barred. In other words, Simpson's former counsel conducted a sloppy but sufficient pre-filing investigation and did enough to shield them from imposition of sanctions.

Simpson's former lawyers faced serious time pressure once they had accepted the case. They reviewed competent evidence of cooperation among the defendants in a scheme to deprive Simpson of the properties, some of which was furnished by an alleged co-conspirator, Velardo. In discussing the matter with Simpson before the filing, Simpson's former counsel were, in effect, requesting court filings and other documents from the person with the most knowledge of the actions and presumably in possession of all the relevant court documents. Under these circumstances, Simpson's former counsel reasonably relied on the documents submitted by the *pro se* Simpson, just as they could reasonably rely on documents turned over by prior counsel. They were not, on penalty of sanction, with a looming statute of limitations deadline, required to cross-check against the actual court filings each document from the prior proceedings that Simpson provided. *See Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1329–30 (2d Cir.1995).

Defendants specifically refer to Simpson's former attorneys' failure to uncover and review the June 19, 1992 affidavits. Our Circuit has stated, however:

> In considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings or at trial. Where such a basis was shown, no inquiry into the adequacy of the attorney's pre-filing investigation is necessary.... Rule 11 makes it even clearer that an attorney is entitled to rely on the objectively reasonable representations of the client. No longer are attorneys required to certify that their representations are "well grounded in fact." Fed.R.Civ.P. 11 (1983) amended 1993. The current version of the Rule requires only that an attorney conduct "an inquiry reasonable under the circumstances" into whether "factual contentions have evidentiary support." Fed.R.Civ.P. 11(b) & (b)(3).

*Hadges,* 48 F.3d at 1329–30.

Accordingly we find that the allegations of RICO conspiracy advanced in the com-

plaint followed an investigation sufficient to avoid the imposition of sanctions and, accordingly, that it was objectively reasonable for plaintiff's former attorneys to advance the claims in the complaint, even if the claims required some imaginative, and inappropriately aggressive, legal theorizing. The Advisory Committee Notes for Rule 11 provide:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion o other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

 We find that the complaint was sufficiently grounded in law and fact, and was not interposed for an improper purpose. Therefore, no sanctions are merited under Rule 11. In addition, for that reason and also because Simpson's former counsel did not multiply proceedings and pursued Simpson's claims in sufficient good faith, no sanctions are warranted under § 1927 or the Court's inherent power.

## IV. Simpson's Conduct Does Not Call for Sanctions

 In addition we find that sanctions should not be imposed on Simpson, who reasonably relied on his former attorneys in filing the complaint. While it is apparent from the text of the Rule that a sanction for attorneys' fees may be imposed either on the attorney who signs a paper, or on the party he represents, or on both, see *Oliveri v. Thompson,* 803 F.2d 1265,

1274 (2d Cir.1986), sanctions are not warranted here. Our Circuit stated in *Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir. 1986):

> The key to rule 11 lies in the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit. While a continuing prohibition against dilatory litigation is imposed by § 1927, see *Roadway Express,* 447 U.S. at 757, 100 S.Ct. at 2459; *Browning Debenture Holders' Committee,* 560 F.2d at 1088, rule 11, by contrast, deals with the signing of particular papers in violation of the implicit certification invoked by the signature.

> Rule 11 applies only to the initial signing of a "pleading, motion, or other paper". Limiting the application of rule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule. Entitled "Signing of Pleadings, Motions, and Other Papers; Sanctions", the rule refers repeatedly to the signing of papers; its central feature is the certification established by the signature.

 Even if he was remiss in not divulging the June 1992 affidavits, defendants have not demonstrated that Simpson's conduct was intentional and in bad faith. The Advisory Committee Notes accompanying the 1993 Amendments to Rule 11 describe factors to be considered when determining whether sanctions are warranted and, if so, the type and degree of any sanction that should be imposed. Those factors include: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible

person, is needed to deter that person from repetition in the same case.

In light of these factors, we, and although the question is a close one, find that the imposition of Rule 11 sanctions against Simpson is inappropriate. In retaining Stein and James to represent him, Simpson ceded responsibility to them for preparing and filing the August 28, 1997 complaint. He turned over to them court files and other documentation. His former lawyers, in turn, assumed responsibility for the case by reviewing those papers, conducting legal research, and investigating the facts and crafting, and ultimately filing, the complaint. Plaintiff, apparently, did not have the requisite legal training to formulate the theories or the claims asserted in that complaint.

In addition, Simpson acted *pro se* in the earlier litigation, and thus, the more lenient standards of competence and compliance apply. *See Maduakolam v. Columbia University*, 866 F.2d 53, 56 (2d Cir. 1989). The June 1992 affidavits concerned the statute of limitations issue, not the merits of the claims. Simpson is not an attorney and the record does not establish that he understood the significance of those documents. "While it is true that Rule 11 applies both to represented and *pro se* litigants, the court may consider the special circumstances of litigants who are untutored in the law." *Maduakolam*, 866 F.2d at 56; *see also Kuntz v. Pardo*, 160 B.R. 35, 40 (S.D.N.Y.1993) (same); *Blossom Pictures, Inc. v. Shore*, No. 90 Civ. 5860(MJL), 1993 WL 36153, at *1 (S.D.N.Y. Feb.10, 1993) (denying motion for rule 11 sanctions against *pro se* plaintiff); *compare Shearing v. United States*, No. 90–CV–973A, 1993 WL 146520, at *5 (W.D.N.Y. Jan.25, 1993) (imposing Rule 11 sanctions on *pro se* plaintiff whose contention that citizens of "the Republic of New York" are not subject to laws of the United States and other arguments were frivolous and would not have been brought by a reasonable person). While Simpson's conduct was highly problematic, the record on this motion does not establish with the requisite clarity that Simpson knew the relationship between his 1992 affidavits and the legal principles underpinning the equitable tolling doctrine that would have meant that his RICO claims were time-barred. *See Maduakolam*, 866 F.2d at 56; *see also Rutherford v. Exxon Co., U.S.A.*, 855 F.2d 1141, 1148 n. 3 (5th Cir.1988) (clearly time-barred appeal was not sufficiently egregious circumstance to impose sanctions under Fed. R.App. P. 38). In addition, the record does not establish that Simpson's dealings with, or reliance on, Stein and James evidenced a sufficient level of bad faith or malice in light of the guidance from our Court of Appeals on Rule 11 that would require the imposition of sanctions, especially in light of its admonition that any doubts should be resolved against the imposition of sanctions.

### CONCLUSION

For the foregoing reasons, defendants motion for sanctions is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**