**William E. MURAWSKI, Plaintiff,**

v.

**George PATAKI, individually and as Governor of the State of New York, et al., Defendants.**

**No. 06 Civ. 12965(RJH).**

United States District Court,
S.D. New York.

Sept. 26, 2007.

William E. Murawski, New York, NY, pro se.

Patricia Lynn Murray, NYS Board of Elections, Albany, NY, Michael A. Cheah, IAC/Interactivecorp, William Alfred Escobar, Joel Graber, Assistant Attorney General, Office of the Attorney General of New York, New York, NY, Kelley Drye & Warren, LLP, New York, NY, for Defendants.

Ronald Gunzburger, Law Office of Ronald M. Gunzburger, Fort Lauderdale, FL, pro se.

Chlarens Orsland, Assistant Corporation Counsel, Office of the Corporation Counsel of New York City, for the City Defendants.

### MEMORANDUM OPINION AND ORDER

RICHARD J. HOLWELL, District Judge.

Pro se plaintiff William E. Murawski commenced this action on November 6, 2006 against the New York State Board of Elections ("State BOE") and the New York City Board of Elections ("City BOE") seeking to enjoin the general election held on November 7, 2006 because the State BOE refused to place his name on the ballot as a gubernatorial candidate. Plaintiff admitted that he had failed to gather the requisite number of signatures to be placed on the ballot, but he claimed that legal precedent mandated that his name be placed on the ballot anyway. In an order dated November 6, 2006, this Court denied plaintiff's request for a temporary restraining order and preliminary injunction.

On November 21, 2006, plaintiff filed an Amended Complaint (hereinafter "Complaint") seeking a declaration that the New York State Election Law is largely unconstitutional. The Complaint lists as defendants: the New York State Board of Elections, former governor George Pataki, and former attorney general Eliot Spitzer (now Governor of New York) (collectively, the "State defendants"); the New York City Board of Elections, Mayor Michael Bloomberg, and former Mayor Rudolph Giuliani (collectively, the "City defendants"); and Ronald Gunzburger, IAC/Interactive Corp., and Yahoo!, Inc. (collectively the "Private defendants"). Defendants moved separately to dismiss the Complaint; defendant Gunzburger also moved for sanctions against plaintiff. For the reasons set forth below, the State BOE's motion to dismiss [13] is granted in part and denied in part.[1] The motions to dismiss by the City defendants and the Private defendants [8, 12, 16, 21, and 22] are granted in their entirety. Defendant Gunzburger's motion for sanctions [15] is denied.

---

1. This motion to dismiss was filed only on behalf of the State BOE and not on behalf of the former Governor and former Attorney General.

## BACKGROUND

The facts, as alleged in plaintiff's Complaint, are as follows. Plaintiff is a frequent political candidate. New York election law provides for the nomination of candidates of independent parties by petition. In 2006, plaintiff filed a timely petition for an opportunity to ballot for the office of Governor on behalf of the Voice of the People Party. (Compl. ¶ 40.) New York Election Law sets forth the number of signatures a petitioner must obtain in order to be nominated as an independent candidate—15,000 for a state-wide election such as the election for governor. *See* N.Y. Elec. Law § 6–142(1) (McKinney 2006). Plaintiff admitted on the cover sheet of his petition that he had not collected the requisite number of signatures, but he added a statement alleging that a legal precedent set during the Republican presidential primary in 2000 nevertheless mandated his placement on the ballot. (Compl. ¶¶ 43–45; State Defs.' Mot. Ex. A (Cover Sheet of Petition).) On September 7, 2006, plaintiff received a formal notice of determination from the State BOE rejecting his petition because he had failed to satisfy the signature requirement. (Compl. ¶ 49; Pl.'s Ex. 42.) Because plaintiff did not consider this an official notice of the State BOE's decision,[2] he contacted the Board and asked whether there would be a hearing on his petition. (Compl. ¶ 46–49.) When he was informed that there would be no hearing, he requested a response from counsel for the State BOE. (*Id.*) He was never contacted by counsel, and he filed this lawsuit one day prior to the general election to enjoin the election and have his name placed on the ballot.

Plaintiff also alleges in his Complaint that the Private defendants undermined his "Master Election Plan" to be elected governor. (*Id.* ¶ 53.) He asserts that defendant Ronald Gunzburger declined to list plaintiff on his website, http://Politics1.com, and also that Gunzburger defamed plaintiff by placing plaintiff's name in a list directly below a member of the Communist Party (*id.* ¶¶ 8, 54–55); that Ask.com, a search engine owned by IAC Search & Media, Inc.,[3] erroneously showed plaintiff to be associated with the Communist Party (as a result of the alleged statement on http://Politics1.com) (*id.* ¶ 55); and that defendant Yahoo!, Inc. refused to permit him to post e-mail messages to various Yahoo! Groups, thus denying him access to "millions" of voters (*id.* ¶ 56).

Finally, plaintiff alleges that in six prior elections between 1997 and 2003 for city and national office, he was improperly kept off the ballot or, in the one instance he was placed on the ballot, lost the election due to "political sabotage." (Compl. ¶ 15(a)-(f)).

## DISCUSSION

### I. Legal Standards

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). Pursuant to Fed.R.Civ.P. Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.

---

2. Plaintiff appears to have based this belief on the fact that he previously received documents with the official seal of the State Board and signatures of State Board officials. (*See* Compl. ¶ 44.)

3. IAC/Interactive Corp. agrees, for purposes of this motion only, that it is a proper defendant. Ask.com is in fact owned by IAC's wholly-owned subsidiary, IAC Search & Media, Inc. (*See* IAC's Mot. 2 n. 1.)

8(a)(2); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."). The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——–——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

Moreover, because plaintiff is proceeding pro se, the Court must liberally construe his pleadings, and must "interpret them 'to raise the strongest arguments that they suggest.'" *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

4. Although plaintiff states in his opposition filing that he "never alleged 1983 violations" (Opp'n ¶ 3(a)), § 1983 provides the necessary private right of action for claims brought pursuant to the First and Fourteenth Amendments so the Court construes the Complaint to state such claims. *See Mitchum v. Foster,*

## II. Analysis

### A. Pre–2006 Claims Against the State BOE and the City Defendants[4]

Before analyzing plaintiff's claims arising out of the 2006 election, the Court notes that plaintiff also challenges the results in six other elections between 1997 and 2003. However, the applicable statute of limitations for § 1983 claims in New York is three years, which begins to run from the moment plaintiff is aware of the injury on which the claim is based. *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 331–32 (2d Cir.1997); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980). Thus, any claims related to elections in 2003 or earlier are outside the statute of limitations period, and the Court will not address them.

### B. The 2006 Election

With respect to the 2006 election, plaintiff claims that the State BOE determination keeping him off the November 2006 ballot violated his due process rights because the Board ignored legal precedent requiring it to place him on the ballot. Plaintiff also claims that the Board improperly denied him a hearing prior to its adverse determination. In addition, plaintiff alleges that the New York State's electoral process imposes a greater burden on independent candidates, thereby violating plaintiff's First Amendment right of expression and association and his Fourteenth Amendment right to equal protection.

407 U.S. 225, 239, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) ("Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.").

### 1. Due Process

■ Before analyzing plaintiff's due process claim, the Court notes that "federal court is generally not the appropriate place to deal with the minutia of state election disputes." *Bert v. N.Y. City Bd. of Elections*, No. 06 Civ. 4789(CPS), 2006 WL 2583741, at *3, 2006 U.S. Dist. LEXIS 63836 (E.D.N.Y. Sept. 7, 2006). "Principles of federalism limit the power of federal courts to intervene in state elections.... Only in extraordinary circumstances will a challenge to a state ... election rise to the level of a constitutional deprivation." *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir.2005) (internal quotation marks and citations omitted). "[T]he due process clause 'offers no guarantee against errors in the administration of an election,' at least where state law provides a fair and adequate method for correcting such errors." *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir.1996) (quoting *Powell v. Power*, 436 F.2d 84 (2d Cir.1970)) (finding that New York Election Law § 16–102 provides a fair and adequate remedy for correcting irregularities in a state primary).

As previously noted, plaintiff concedes that his 2006 petition did not contain the minimum number of signatures required by New York State election law. He nevertheless argues that the State BOE's determination was unlawful because it ignored precedent set in *Molinari v. Powers*, 82 F.Supp.2d 57 (E.D.N.Y.2000). The following statement appeared on the cover sheet of plaintiff's nominating petition:

> The petition does not contain the number of signatures required by the Election Law of the State of New York. However, a precedent was set in 1999 when Alan Keyes "piggybacked" as an intervener to *McCain v. Molinari* (1999 civ. 8447) thereby resulting in Alan Keyes being placed on the ballot without submitting one signature. Therefore, William E. Murawski must be placed on the ballot.

(Compl. ¶ 43; State Defs.' Mot. Ex. A (petition).)

In *Molinari*, Senator John McCain and his supporters filed a complaint in the U.S. District Court for the Eastern District of New York seeking a declaration that the ballot access laws governing the Republican presidential primary constituted an undue burden on their First Amendment rights *Molinari*, 82 F.Supp.2d at 58–59, 68. The McCain plaintiffs moved for a preliminary injunction to declare the entire Republican-selected ballot access scheme unconstitutional as applied and direct defendants (the New York Republican State Committee, its chairman, and the various boards of elections throughout the state, along with their commissioners) to place delegate candidates pledged to support Senator McCain on the ballot in each of New York's thirty-one congressional districts. *Id.* at 68. Republican presidential candidate Alan Keyes and certain of his supporters joined in the action (by a motion to intervene) seeking to have Keyes delegate slates placed on the primary ballot in every district as well. *Id.* at 69. The district court heard oral argument over two days, but before it issued its opinion, parties to the lawsuit stipulated that the electoral scheme placed an undue burden on the right to vote under the First Amendment and agreed that all candidates (Bush, McCain, Forbes, and Keyes) should be allowed on the ballot statewide. *Id.* The district court subsequently issued an opinion identifying two aspects of the electoral scheme (regarding the residency of petition signers and witnesses) as unconstitutional. *Id.* at 71. The statute that established the challenged ballot access scheme was repealed on December 31, 2000. *See* Act of June

29, 1999, 1999 N.Y. Laws 137 (expired 2000); (State Defs.' Mot. 5.)

The Court concludes that the outcome in *Molinari* does not require the State BOE to place plaintiff's name or the name of other independent candidates on the ballot where such individuals have failed to comply with the State's ballot access requirements. The statute setting forth the ballot access requirements for gubernatorial elections is not the same statute challenged in *Molinari*. More to the point, plaintiff did not enter into a stipulation with the State defendants that would have mandated placement of his name on the ballot.

 Plaintiff also claims that the State BOE'S refusal to grant him a hearing prior to rejecting his petition violated his right to due process under the Fourteenth Amendment. The Due Process clause of the Fourteenth Amendment guarantees that States will not deprive a person of life, liberty, or property without due process of the law. *See* U.S. Const. amend. XIV. "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided and whether it was constitutionally adequate." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). And in determining the adequacy of the process, it must first be determined whether the decision by the State BOE rejecting a petition to be placed on the ballot gives rise to a claim (a) "based on random, unauthorized acts by state employees," or (b) "based on established state procedures." *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996). If the former, procedural due process requirements are met so long as the state "provides a meaningful postdeprivation remedy"; if the latter, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Id.; accord*

*Rivera–Powell v. N.Y. City Bd. of Elections,* 470 F.3d 458, 465 (2d Cir.2006). Thus, where the State BOE decision reflects established state procedure, the court must evaluate the adequacy of the post-deprivation remedy by considering the factors set forth *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

 As in *Rivera–Powell,* 470 F.3d at 466–67, the Court finds it unnecessary to determine whether the State BOE's actions are properly characterized as "random acts," or reflective of "established state procedure." In either case, the Court concludes that New York provides a comprehensive state court review process whereby decisions of the State BOE may be expeditiously challenged. Under N.Y. Elec. Law § 16–102(1), a party may file a judicial proceeding in New York Supreme Court to validate a nominating petition within fourteen days of the last day to file a petition, or within three business days of the State BOE's decision, whichever is later. *See Sirignano v. Sunderland,* 196 Misc.2d 831, 836, 766 N.Y.S.2d 786 (N.Y.Sup.Ct.2003) (stating that failure to file within the statutory time period is a "fatal jurisdictional defect"). Here, written notice of the State BOE's determination of the invalidity of plaintiff's petition was issued on Wednesday, September 6, 2006, and plaintiff concedes that he received notice on Thursday, September 7,

2006. Plaintiff then had sufficient time—until Monday, September 11, 2006—to initiate judicial proceedings. In that proceeding, plaintiff could have raised any and all issues relating to the validity of his petition; he would not have been limited to the issue of insufficiency of signatures, which was the basis of the State BOE's determination. *See* N.Y. Elec. Law § 16–100 ("The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in this article, which shall be construed liberally."); *Smith v. Marchi,* 143 A.D.2d 325, 532 N.Y.S.2d 389, 390 (N.Y.App.Div.1988) (holding that trial courts have jurisdiction to decide petitions "on grounds other than those asserted before the Board of Elections"). The fact that plaintiff did not avail himself of the opportunity to challenge the State BOE's determination does not create a procedural due process violation. *See Rivera–Powell,* 470 F.3d at 468 (rejecting a due process challenge to the City BOE's decision to remove name from the ballot). For all of these reasons, the Court rejects plaintiff's procedural due process challenge to the determination made by the State BOE.[5]

## 2. First and Fourteenth Amendment Rights

██ Plaintiff also seeks a declaratory judgment invalidating certain aspects of New York's electoral law that plaintiff claims impose a greater burden on independent candidates in violation of the Equal Protection Clause and plaintiff's rights of expression and association under the First and Fourteenth Amendments. (Compl. ¶¶ 15, 16, 35.) Plaintiff's complaints concerning signature requirements include the purportedly too-short time period in which to gather petition signatures (*id.* ¶ 16); the fact that the petition period occurs during the "brutal" summer months when many people are on vacation (*id.*); the perceived unfairness of the state judicial process for challenging signatures, especially the use of hearing officers and referees to rule initially on signature validity (*id.* ¶ 18); and the fact that candidates must collect as much as three times as many signatures because the database of registered voters is not up-to-date.[6] Plaintiff also challenges practices that make it more difficult for write-in candidates to be elected, specifically poll workers' alleged lack of training regarding how to assist voters who wish to vote for write-in candi-

---

**5.** In *Rivera–Powell,* the court based its decision in part on the fact that plaintiff had an opportunity, prior to the City BOE's decision, to be heard at a hearing at which the Board considered (and ultimately accepted) objections made to the adequacy of plaintiff's petition to be placed on the ballot. 470 F.3d at 467–468. Even in the absence of an opportunity to be heard prior to a BOE decision, however, the statutory provision for an expedited review of that determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements. *See Cornett v. Sheldon,* 894 F.Supp. 715, 727 (S.D.N.Y.1995) (N.Y. Election Law § 16–102 affords due process); *see also Rivera–Powell,* 470 F.3d at 468 fn. 10 (discussing but not deciding issue of whether § 16–102 should properly be considered "pre-deprivation" review).

**6.** Plaintiff also claims that the database of registered voters fails to comply with the Help America Vote Act of 2002, 42 U.S.C. § 15301 *et seq.,* because it contains the names of individuals over age 150, individuals with no date of birth, deceased individuals, multiple registrations for the same individual, and individuals whose names should be removed because they did not vote in the last two federal elections. (Compl. ¶¶ 29, 33.) Obviously, if the database did not contain the names of currently registered voters, that would create a cognizable injury because that plaintiff would have to obtain extra signatures to overcome any challenges. Plaintiff does not explain, however, why the inclusion of extra names in the database creates a legally cognizable injury. Accordingly, the Court finds that plaintiff does not have standing to assert this claim.

dates (*id.* ¶¶ 19–24), and the use of mechanical voting machines rather than paper ballots (*id.* ¶¶ 25–28).

 Courts considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected· by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi,* 504 U.S. 428, 435, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (internal quotation marks and citations omitted). Where state laws subject fundamental rights like the right to vote to "severe restrictions," the reviewing court must apply strict scrutiny, and thus consider whether the state regulatory scheme is narrowly tailored to serve a compelling state interest. *See Lerman v. Bd. of Elections,* 232 F.3d 135, 145 (2d Cir.2000); *Prestia v. O'Connor,* 178 F.3d 86, 87 (2d Cir.1999). However, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick,* 504 U.S. at 435, 112 S.Ct. 2059 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). Accordingly, for plaintiffs challenging the constitutionality of a state election law on First Amendment grounds, the contest is · most often won or lost on the question of whether the burden imposed by the state law is "reasonable" or "severe."

 In its motion to dismiss, the State BOE did not address plaintiff's general objections to New York's electoral process, presumably because it construed the Complaint as seeking only to challenge the Board's determination that his petition was invalid. The Court reads plaintiff's complaint, however, to challenge the process more generally. (*See* Compl. 22.) The Court notes that plaintiff's claims face · an uphill battle, as the· Supreme Court has recognized that States have an important interest in "requiring some preliminary showing of a significant modicum of support" before printing a candidate's name on the ballot, so as to "avoid[ ] confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *see also Prestia v. O'Connor,* 178 F.3d 86, 88 (2d Cir.1999) (stating that "a requirement that ballot access petitions be signed by at least 5%" of the relevant political party membership "is generally valid"); *id.* at 88 n. 1 ("[I]f adequate ballot access is provided, it is constitutionally permissible for states to prohibit write-in voting altogether."). The Second Circuit has also rejected arguments that New York's ballot access requirements impermissibly limit smaller parties' access to the ballot. *See Person v. N.Y. State Bd. of Elections,* 467 F.3d 141, 144 (2d Cir.2006). Nevertheless, as the State defendants have not briefed these issues, the Court declines to address the constitutionality of the challenged signature requirements, training of poll workers, and use of mechanical voting machines at this stage.[7]

Although the Court will permit plaintiff's claims for declaratory relief against the State defendants to survive this motion

---

**7.** The State BOE may seek leave to file a further motion to dismiss to address these · claims.

to dismiss, all other claims against the State BOE and the City defendants are dismissed. The City BOE had no involvement in the 2006 election, and the former and present mayors of the City of New York have no role in the administration of state election law. In addition, plaintiff's claims against Mayor Bloomberg and the City BOE for "negligence" (Compl. ¶ 10) will not support a claim pursuant to Section 1983, and this Court has no other basis for jurisdiction over these claims. As noted earlier, the Court also dismisses claims against all moving defendants that fall outside the statute of limitations period under § 1983.

### E. Yahoo! Inc.

Plaintiff brings claims against Yahoo!, Inc., pursuant to 42 U.S.C. § 1983, for violating his First Amendment right to free speech, because "he was not permitted to post email messages to Yahoo! groups to which he belonged at critical times" during the 2006 gubernatorial election. (Compl. ¶ 56.) The Complaint does not describe in what way Yahoo!, Inc. prevented plaintiff from posting e-mail messages.

▆▆▆ Plaintiff's allegations must be dismissed because Yahoo!, Inc. is a private, for-profit company and is not subject to constitutional free speech guarantees. "Complaints relying on 42 U.S.C. § 1983 are plainly insufficient unless they contain at least some allegations of facts indicating that a defendant acted under color of state law to deprive the plaintiff of federally protected rights." *Kenard v. Nussbaum*, No. 87 Civ. 0318(MGC), 1988 WL 25240, at *3, 1988 U.S. Dist. LEXIS 1328 (S.D.N.Y. Feb. 26, 1988) (citing *Lugar v. Edmondson Oil*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) and *Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir.1975)). There is no allegation in the complaint that Yahoo!, Inc. acted under color of state law,

and the Court rejects plaintiff's contention in his opposition that Yahoo!, Inc. is transformed into a state actor because it benefited from early public funding of the development of the internet. *Cf. Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir.2003) (rejecting the argument that AOL is a state actor because it provides a connection to the internet on which government and taxpayer-funded websites are found, or because it opens its network to the public); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 754 (9th Cir.2000) (rejecting the argument that AOL is a state actor because it is a "quasi-public utility" that "involves a public trust"); *Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 510–11 (D.C.Cir.1999) (holding that company performing domain name registration services is a private actor). Plaintiff's claims against Yahoo!, Inc. are dismissed.

### C. Ronald Gunzburger

### 1. Plaintiff's Claims Against Gunzburger

Plaintiff brings two claims against defendant Ronald Gunzburger. First, plaintiff alleges that Gunzburger refused to list plaintiff on his "influential political website," http://Politics1.com, in violation of plaintiff's First Amendment rights. Second, plaintiff alleges that once Gunzburger listed plaintiff on his website, he defamed plaintiff by placing plaintiff's name in a list directly below a member of the Communist Party, causing plaintiff's name to appear with the word "communist" on Google, Yahoo!, and Ask.com search engines. (Compl. ¶¶ 8, 54–55; Opp'n Exs. A–E.)

Gunzburger's initial failure to list plaintiff on his private website fails for the same reason that plaintiff's claim against Yahoo!, Inc. fails—plaintiff is a private actor and his site is a private website and therefore neither are subject to constitutional free speech guarantees. Indeed,

plaintiff does not even allege that Gunzburger is a state actor or that he was acting under color of state law. Accordingly, plaintiff's First Amendment claims against Gunzburger are dismissed.

■ In support of his motion to dismiss plaintiff's claim of defamation, Gunzburger has submitted a copy of the website page containing the allegedly defamatory statement. Although plaintiff asks the Court not to consider this evidence, the Court will do so because plaintiff relies on the statement in his Complaint and the statement is integral to plaintiff's action. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nonetheless take that document into consideration in deciding a defendant's motion to dismiss); *Kreiss v. McCown De-Leeuw & Co.*, 37 F.Supp.2d 294, 298 n. 3 (S.D.N.Y.1999) (considering documents not attached to the complaint, but which were integral to the plaintiffs' claims, and which the plaintiff had notice of and relied upon); *Knievel v. ESPN, Inc.*, 223 F.Supp.2d 1173, 1176 (D.Mont.2002) (taking into consideration on a motion to dismiss the contents of the website "at the center of Plaintiff's allegations," when the website "is mentioned in the complaint and copies of some of the pictures are attached to the complaint").

■ An action for defamation that is expressed in writing or print constitutes the common law cause of action for libel. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir.2001). In order to state a cause of action for libel under New York law, a plaintiff must plead: "(1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff." *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir.2001) (citations omitted). "The gravaman of an action alleging defamation is an injury to reputation." *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir.2000). A defamatory statement is one that exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induces an evil opinion of one in the minds of right-thinking persons, and ... deprives one of ... confidence and friendly intercourse in society." *Kimmerle v. New York Evening Journal*, 262 N.Y. 99, 186 N.E. 217, 218 (1933); *accord Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 659 N.Y.S.2d 836, 681 N.E.2d 1282, 1283 (1997). When a plaintiff in a libel action has identified a plausible defamatory meaning in a challenged statement or publication, the court "must determine, as a matter of law, whether that one meaning is defamatory." *Celle*, 209 F.3d at 178 (quoting *Davis v. Ross*, 754 F.2d 80 (2d Cir.1985)).

■ In the instant case, plaintiff's libel claim is meritless. Significantly, plaintiff does not allege that Gunzburger ever stated on his website that plaintiff was a communist.[8] His only allegation is that Gunzburger placed plaintiff's name next to the name of another individual identified as a "Communist Political Organizer," and, as a

8. The Court need not decide for purposes of this motion whether calling someone a communist is libel. *But see, e.g., Lasky v. American Broadcasting Cos.*, 606 F.Supp. 934, 940 (S.D.N.Y.1985) (stating that "accusing another of being a communist is not libel when it occurs in the midst of public debate in which voices are expected to be raised in sloganeering invective").

result, a search on his name using the Google, Yahoo!, and Ask.com search engines pulled up the Politics1.com website with a snippet of text showing his name immediately after the words "Communist Political Organizer." (Compl. ¶ 54; Opp'n Ex. A.) Like most search engines, however, Ask.com does not display line or paragraph breaks that appear on the original source page, so anyone looking at a search engine result would have to follow the link to the source page to discover how the text was in fact presented. Here, the website page submitted with Gunzburger's motion shows the allegedly defamatory text as follows:

> Maura DeLuca (SWP)—Garment Worker & Communist Political Organizer
>
> & Ben O'Shaughnessy (SWP)—College Student & Communist Political Organizer
>
> Bill Murawski (Write–In)—Journalist, Public Access TV Show Producer & Frequent Candidate
>
> & Donald Winkfield (Write–In)—Journalist

(Gunzburger Mot. Ex. B.) It is thus apparent that Gunzburger did not identify plaintiff as a communist on his website, and thus there is no basis for plaintiff's claim against Gunzburger. The fact that various search engines displayed the text from Politics1.com without line breaks is not attributable to Gunzburger. Accordingly, Gunzburger's motion to dismiss is granted.

### 2. Gunzburger's Motion for Rule 11 Sanctions

Gunzburger argues that "[n]o reasonable party making even the most cursory inquiry could have believed that plaintiff's claim had or was likely to have evidentiary support." (Gunzburger Mot. 4.) Accordingly, Gunzburger requests an order imposing sanctions on plaintiff, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Rule 11 permits sanctions for filing a claim containing frivolous legal arguments or factual allegations utterly lacking in evidentiary support. *See O'Brien v. Alexander*, 101 F.3d 1479, 1488–90 (2d Cir. 1996). Rule 11 applies to both attorneys and pro se litigants in guarding against frivolous, vexatious, or scurrilous lawsuits. *Maduakolam v. Columbia University*, 866 F.2d 53, 56 (2d Cir.1989). Indeed, the fact that a litigant appears pro se "does not shield him from Rule 11 sanctions because one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Malley v. New York City Bd. of Educ.*, 207 F.Supp.2d 256, 258 (S.D.N.Y.2002) (internal quotation marks and citations omitted). Nevertheless, "the court may consider the 'special circumstances of litigants who are untutored in the law.'" *Simpson v. Putnam County Nat'l Bank of Carmel*, 112 F.Supp.2d 284, 292 (S.D.N.Y.2000) (quoting *Maduakolam .v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir.1989)). The court may also consider "whether the litigant has been warned of the possible imposition of sanctions." *Daniel v. Safir*, 135 F.Supp.2d 367, 379 (E.D.N.Y.2001).

Ultimately, the decision to impose Rule 11 sanctions rests in the sound discretion of the court, *see Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir.2004), and "should be imposed with caution," *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). While plaintiff's claims against Gunzburger are so completely without merit as to border on the vexatious, plaintiff may not have been aware or warned of the possible imposition of sanctions. Accordingly, the Court declines to impose sanctions at this time.

### D. IAC/Interactive Corp.

As described already, plaintiff requested that Ask.com remove http://Politics1.com

from its directory because of the association of his name in Ask.com's search results with the Communist Party.

■ Plaintiff's claims against IAC are barred by the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, *et seq.* Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," *id.* § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). Section 230(c) thus immunizes internet service providers from defamation and other, non-intellectual property, state law claims arising from third-party content. *See Gucci Am., Inc. v. Hall & Assocs.*, 135 F.Supp.2d 409, 417 (S.D.N.Y.2001) (citing legislative history of the CDA); *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997) (holding that "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred" by the CDA); *Barrett v. Rosenthal*, 40 Cal.4th 33, 51 Cal.Rptr.3d 55, 146 P.3d 510, 518 n. 9 (2006) (collecting cases).

■ The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Ask.com is an "interactive computer service" because it is an internet search engine that allows members of the public to search its directory of web pages (*see* Compl. ¶ 55) and is therefore an "information service ... that provides or enables computer access by multiple users to a computer server." 47

U.S.C. § 230(f)(2); *see also Parker v. Google, Inc.*, 422 F.Supp.2d 492, 501 (E.D.Pa. 2006) (holding that "there is no doubt that Google [another internet search engine] qualifies as an 'interactive computer service' "). It is equally clear that the text displayed from http:// Politics1.com when plaintiff ran a search for his name on Ask.com was "information provided by another information content provider," 47 U.S.C. § 230(c)(1), specifically the Politics1.com website. Accordingly, Ask.com cannot be held liable for any statements made on http://Politics1.com, including information that appears as a result of a search query of plaintiff's name.

■ Nor can Ask.com be held liable for failing to keep any alleged promise to remove http://Politics1.com from its directory. (*See* Compl. ¶ 55.) Deciding whether or not to remove content or deciding when to remove content falls squarely within Ask.com's exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity. *See, e.g., Zeran*, 129 F.3d at 330 (holding that the CDA immunized AOL from liability for failing to remove a defamatory posting on an online bulletin board); *Parker*, 422 F.Supp.2d at 500 (holding that the CDA shielded Google from liability for archiving an allegedly defamatory website, even after receiving notice of the defamatory content); *Barnes v. Yahoo!, Inc.*, No. 05 Civ.926, 2005 WL 3005602, at *4, 2005 U.S. Dist. LEXIS 28061 (D.Or. Nov. 8, 2005) (finding that the CDA immunized Yahoo!, Inc. from plaintiff's claim that it was liable for its "failure to fulfill its promise to remove" allegedly defamatory content from its websites). Accordingly, IAC's motion to dismiss is granted.

## CONCLUSION

For the reasons stated above, the State BOE's motion to dismiss [13] is GRANT-

ED in part and DENIED in part. All other motions to dismiss [8, **12, 16, 21, and 22**] are GRANTED in their entirety. Defendant Gunzburger's motion for sanctions [15] is DENIED. The Complaint is dismissed against the City and Private defendants in its entirety and the Clerk is directed to terminate those defendants from the caption of this case.

SO ORDERED.