**Frank BUONANOTTE,
et al., Plaintiffs,**

v.

**Shari NOONAN, Acting Commissioner of New York State Office of Alcoholism and Substance Abuse Services, in her individual capacity and Henry F. Zwack, Executive Deputy Commissioner of New York State Office of Alcoholism and Substance Abuse Services, in his individual capacity, Defendants.**

**No. CV 07–2100.**

United States District Court,
E.D. New York.

Feb. 14, 2008.

Jaspan Schlesinger Hoffman LLP by Laurel R. Kreitzing, ESQ., Garden City, NY, for Plaintiffs.

Andrew M. Cuomo, Attorney General of the State of New York by Ralph Pernick, Esq., Assistant Attorney General, Mineola, NY, for Defendants.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs commenced this lawsuit alleging that actions taken by Defendants in connection with Plaintiffs' rights to offer alcohol and substance abuse services and housing, violated their civil rights. The individual Plaintiff is Frank Buonanotte, a resident of Suffolk County who is the Chief Executive Officer of the Plaintiff corporate entities. These corporations are seven entities operating under names that include the name "Crossings," (the "Crossings Entities") as well as six entities operating under names including the name "Woodfield" (the "Woodfield Entities"). The exact corporate structure of each of these entities is not clear at this point in the litigation. The court assumes, for the purpose of this motion, that these various entities were owned and/or controlled by Frank Buonanotte ("Buonanotte" or the "Individual Plaintiff"). It appears that the Crossings Entities held, at one time or another, operating certificates issued by the New York State Office of Alcoholism and Substance Abuse Services ("OASAS"). These operating certificates allowed the Crossings Entities to serve as centers providing substance abuse outpatient services. The Woodfield Entities appear to have owned or leased the real estate where Buonanotte operated sober houses, offering substance abuse services on an inpatient basis.

Named as defendants are two individuals. Defendant Shari Noonan is the Acting Commissioner of OASAS and Defendant Henry Zwack is that agency's Executive Deputy Commissioner. Presently before the court is the motion of Defendants to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND

I. *Factual Background*

The facts set forth below are drawn from Plaintiffs' complaint. The facts are construed in the light most favorable to Plaintiffs, the non-moving parties and assumed, at this juncture, to be true. Facts are also drawn from state court judicial records presently before the court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (in context of motion to dismiss court may consider matters of which judicial notice may be taken as well as documents in plaintiff's possession which are relied upon in bringing suit).

As noted, the Individual Plaintiff is engaged in the business of operating centers

that provide inpatient and outpatient substance abuse services. Some, but not all of these centers are required to hold, and have been issued, operating certificates issued by OASAS. The facts forming the basis of the complaint begin in or around July of 2005 when OASAS announced that it was imposing fines and taking over the business of treatment centers operating under the name "Lake Grove Treatment Centers" ("LGTC"). Neither the Individual Plaintiff nor the Plaintiff corporate entities have any connection with LGTC. However, upon hearing of the action of OASAS with respect to LGTC, the individual Plaintiff negotiated leases with landlords of certain LGTC sober homes that would allow Plaintiffs to continue offering the services operating in these facilities.

Defendant Zwack is alleged to have told Plaintiff to stop pursuing the patients and/or treatment centers formerly operated under the LGTC name. When Buonanotte asked why he was being asked to cease his negotiations, Zwack is alleged to have told Buonanotte that he should "keep himself off the radar" so as not to become the subject of an OASAS investigation.

On July 20, 2005, Zwack send a letter to Buonanotte advising him that the LGTC sober homes were in a receivership agreement with OASAS. It was further stated that Plaintiff's continuing negotiations to take over the operation of those homes would create a risk to the safety of the residents. The letter also asserted that Buonanotte's sober homes were being operated in violation of the Mental Hygiene Law. The letter threatened that unless Buonanotte confirmed that he would discontinue any involvement with LGTC sober homes, a cease and desist order for all of the Crossings sober homes would be issued on July 21, 2005. The statements contained in the July 20, 2005 letter are alleged to have been false and that Zwack knew of their falsity at the time.

On December 21, 2005, Zwack, with the alleged knowledge and consent of Defendant Noonan, issued Buonanotte a Notice of Intent to revoke OASAS operating certificates for the Crossings entities. Buonanotte alleges that this notice was sent despite the fact that OASAS knew that Crossings was entitled to renewal. The filing of the Notice of Intent triggers a ten day period during which Plaintiffs were entitled to submit a written request for a hearing. On December 26, 2005, Buonanotte timely requested a hearing.

On January 21, 2006, Zwack, with the alleged knowledge and consent of Defendant Noonan, signed a Cease and Desist Order and three days later, Noonan commenced a petition in State Court seeking appointment of a receiver against Crossings. Plaintiffs' complaint details various provisions of the Mental Hygiene Law and states that Noonan acted outside of the scope of that law in several respects. In general, Zwack and Noonan are alleged to have refused or neglected to afford Plaintiffs the hearing and related procedural safeguards to which they were entitled. Zwack is alleged to have signed an order: (1) imposing upon Plaintiffs a civil penalty in excess of $6 million; (2) revoking Plaintiffs' operating certificates with respect to several facilities and (3) ordering that OASAS operating certificates which were set to expire, not be renewed.

A suspension order directed at Plaintiff is alleged to have been signed on February 14, 2006. This suspension order is alleged to have prohibited Plaintiffs from providing substance abuse treatment. The order also provided that OASAS would be maintaining OASAS personnel at Plaintiffs' treatment centers.

On February 23, 2006, Buonanotte accepted a voluntary receivership of the facilities operated by Plaintiffs. Pursuant to this receivership, which Buonanotte asserts he was "coerced" into accepting,

OASAS was to maintain all clinical and business functions of the Plaintiff facilities until the court proceedings were finalized. Further, according to the complaint, the receiver represented that the status quo would be maintained with respect to the Plaintiff treatment centers and those centers would not be closed without Buonanotte's consent. However, according to Plaintiffs, Defendants actually intended to use the receiverships as the means to drive Plaintiffs out of business. Defendants are alleged to have "systematically destroyed Crossings' business by improperly referring away its patients and, essentially, closing its facilities."

On March 6, 2006, a hearing was held in relation to the OASAS determination to revoke Plaintiffs' operating certificates. In May of 2006, the New York State Court terminated the receivership and ordered that the assets of Crossings be returned to Plaintiff's control. Plaintiffs allege that by that time, "Crossings was stripped of its patients and its assets. Indeed, despite the fact that OASAS was ordered to return all of Crossings assets, and despite the order to return all of Crossings' assets to Buonanotte, OASAS returned only a small portion of the property seized." On September 29, 2006, a hearing officer issued a Report and Recommendation, which upheld the OASAS decision to revoke Plaintiffs' operating certificates as well as many of the fines imposed.

## II. *Plaintiffs' Claims*

Plaintiffs' complaint sets forth three causes of action. The first two causes of action allege violation of Plaintiffs' rights pursuant to the Due Process and Equal Protection Clauses of the United States Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs' Due Process claim alleges that Plaintiffs possessed a property interest and a legitimate claim of entitlement to their operating certificates and that Defendants actions in "targeting" Plaintiffs for enforcement and revoking Plaintiffs' operating certificates was "so arbitrary, irrational, and without basis in law or fact so as to be unconscionable in violation of Plaintiffs' due process rights."

The Equal Protection claim alleges that no other similarly situated treatment center under the control of OASAS has had its operating certificates revoked as a result of the violations that Plaintiffs are alleged to have committed. It is further alleged that the actions of OASAS with respect to the Plaintiffs' operating certificates were discriminatory, based upon impermissible considerations, were intentional, irrational and based upon ill will and personal animus and dislike of Plaintiffs.

Plaintiffs' final cause of action is a state law action alleging fraud. The fraud cause of action alleges that Defendants engaged in a scheme, with the intent of defrauding Plaintiffs, by "wrongfully, maliciously, intentionally and without reasonable justification or excuse" enticing Plaintiffs into agreeing to a plan of voluntary receivership and falsely representing that the business of Plaintiff would be continued until court proceedings were finalized.

Plaintiff's seek compensatory damages of $15 million and punitive damages in the minimum sum of $ 75 million.

## III. *Defendants' Motions to Dismiss*

Defendants move to dismiss all claims. Dismissal of Plaintiffs' Due Process claim is sought on the grounds that Plaintiffs knew of several pending violations as to their centers. It is further argued Plaintiffs never had a protected property right to the operating certificates, which were revocable at will and further, that Plaintiffs received all of the procedural process due. Dismissal of the Equal Protection claims is sought on the ground that the claim is not properly pled. Finally, it is argued that Plaintiffs' common law fraud claim is barred by absolute immunity.

*DISCUSSION*

## I. General Principles

### A. Standards For Motion to Dismiss

In *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.,* 127 S.Ct. at 1974.

■ The "plausibility" language used by the Supreme Court in *Bell Atlantic,* has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty,* 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, *Bell Atlantic* holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Williams v. Berkshire Fin. Grp. Inc.,* 491 F.Supp.2d 320, 324 (E.D.N.Y.

2007), quoting, *Bell Atlantic Corp.,* 127 S.Ct. at 1959.

■ In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. *Watts v. Services for the Underserved,* 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.,* 127 S.Ct. at 1974. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing her lawsuit. *See Brass v. Amer. Film Techn., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Watts,* 2007 WL 1651852 *2.

### B. The Section 1983 Claims: General Principles

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). The constitutional rights alleged to have been violated here are Plaintiffs' rights to Due Process and Equal Protection of the law.

## II. Due Process Claim

### A. Legal Principles

Plaintiffs claim denial of their right to procedural due process.[1] The protected

---

1. The language of the amended complaint, which refers to "unconscionable" action, appears to allege a substantive due process claim. *See Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999) (substantive due

process rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority"). The parties' memoranda of law, however, address

property right or "entitlement," forming the basis of Plaintiffs' due process challenge is the right to the operating certificate. While Defendants argue that Plaintiffs received all of the process due, Plaintiffs allege that under the circumstances they were entitled to a pre-deprivation hearing.

■■■ The Due Process Clause protects against the deprivation of constitutionally protected rights without due process of law. *Rivera–Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464–65 (2d Cir. 2006). The first issue to consider is whether plaintiff alleges the existence of a constitutionally protected right. It has been recognized that professional licenses may be protected property interests. *See, e.g., Donk v. Miller*, 365 F.3d 159, 163 (2d Cir.2004). On the other hand, state discretion as to the grant or renewal of a license may militate against a finding of a protected property right. *See Spinelli v. City of New York*, 2007 WL 766110 *3 (S.D.N.Y. 2007).

■■■ Once a protected property right is established, the question is whether there has been a deprivation of that right without due process of law. *See Adams v. Suozzi*, 448 F.Supp.2d 448, 452–53 (E.D.N.Y.2006). As to this issue, courts distinguish between post-deprivation and pre-deprivation remedies. When the challenged state conduct is "random and unauthorized," procedural due process is satisfied so long as the state provides an adequate post-deprivation remedy. *Rivera–Powell*, 470 F.3d at 465; *Adams*, 448 F.Supp.2d at 454. On the other hand, where the deprivation is accomplished pursuant to an established state procedure, the state can, in and certain circumstances must, provide a pre-deprivation

remedy. *Rivera–Powell*, 470 F.3d at 466 (recognizing that where state action is pursuant to policy, availability of post-deprivation remedy does not *automatically* satisfy due process) (emphasis in original); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996) (in cases alleging action pursuant to official state procedure, post-deprivation remedy will not "ipso facto" satisfy due process).

As to the issue of whether challenged conduct is random and unauthorized, or pursuant to state procedure, the Second Circuit has held that for the purpose of a due process analysis, the acts of "ultimate decision-makers," even if those acts are contrary to state law, are not to be considered as random and unauthorized. *Rivera–Powell*, 470 F.3d at 465–66 (citations omitted); *see, e.g., Adams*, 448 F.Supp.2d at 454–55 (County Executive and Chief Executive Officer of County held to be high-ranking officials whose decisions more closely resemble state procedures than the "haphazard" acts of individual state actors).

■■■ When determining the adequacy of the available state remedy, four factors must be balanced. Specifically, the court considers: (1) the private interest affected by the state action; (2) the risk of an erroneous deprivation through the established state procedures; (3) the probable value of different or additional safeguards and (4) the Government's interest, including the administrative and financial burden or additional procedural safeguards. *Rivera–Powell*, 470 F.3d at 466; *Murawski v. Pataki*, 514 F.Supp.2d 577, 585 (S.D.N.Y.2007); *see Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It has been recognized

---

the claim as procedural. The court interprets the complaint as such and decides the issue

placed before it by the parties.

that due process "is flexible and calls for such procedural protections as the particular situation demands." *Donk,* 365 F.3d at 163, quoting, *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The particular circumstances surrounding the deprivation will determine whether state procedures satisfy due process. *See Island Park. LLC v. CSX Transportation, Inc.,* 2007 WL 1851784 *6 (N.D.N.Y.2007). Moreover, the adequacy of procedures is not affected by the issue of whether plaintiff elected to take advantage of the process afforded. *Murawski,* 514 F.Supp.2d at 586.

### B. *Sufficiency of the Due Process Claim*

Plaintiffs allege a property right in the licenses to operate their facilities. It is further alleged that the Plaintiffs were entitled to a pre-deprivation hearing, which was not granted. Defendants argue that under the factual circumstances of this case, Plaintiffs' due process rights were satisfied by the ongoing dialogue with OASAS, and an adequate post-deprivation remedy. Additionally, Defendants point out that certain Plaintiffs, including the Individual Plaintiff and the Woodfield entities, never held operating licenses and therefore have no constitutionally recognized property interest to protect.

 In the context of this motion to dismiss, the court holds that the presence of numerous issues of fact preclude dismissal. Among those questions are the nature of the entities holding the licenses, and which of those entities, if any, possessed constitutionally protected rights. More importantly, the court cannot, without further factual development, ascertain the nature of the interests at stake so as to determine the adequacy of the remedy provided by the state. It cannot be said that the remedy was adequate or inade-

quate as a matter of law. Discovery must proceed and facts must be developed.

### III. *Equal Protection Claim*

#### A. *Legal Principles*

 The Fourteenth Amendment right to Equal Protection of the Law is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Disabled American Veterans v. United States Dep't of Veterans Affairs,* 962 F.2d 136, 141 (2d Cir. 1992). While an equal protection claim may be based upon the allegation that plaintiff was a victim of discrimination due to membership in a protected class, *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir. 1995), the right to equal protection also extends to individuals who allege disparate treatment based upon ill will or without rational basis. *Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001). To establish an equal protection violation in a zoning context, a plaintiff must show treatment different from other similarly situated individuals. *Harlen,* 273 F.3d at 499. Similarity is generally a factual issue for a jury. That rule is "not absolute, however, and a claim can be subject to summary dismissal where no rational jury could find similarity." *Harlen,* 273 F.3d at 499 n. 2.

 In addition to a showing of similarity, Plaintiffs must also show either that the disparate treatment: (1) was based upon "impermissible considerations," including the "malicious or bad faith intent to injure," or (2) was wholly irrational or arbitrary. *Harlen,* 273 F.3d at 500, *see Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir.2005); *see also Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The latter type of equal protection claim focuses on whether

the conduct of the local official was rationally related to his work.

### B. Sufficiency of the Equal Protection Claim

■ Plaintiffs allege a violation of their equal protection rights based upon an allegation of selective enforcement of the law. Such enforcement is alleged to be based upon malicious and arbitrary treatment. As noted above, Plaintiffs can state such a claim only by a showing of disparate treatment coupled with a showing of either ill will or arbitrary and irrational official action. Defendants argue that Plaintiffs' complaint fails with respect to each element.

Despite the pleading standard announced in *Bell Atlantic*, there is no requirement that a plaintiff detail, with particularity, instances demonstrating the disparate treatment alleged in the complaint. It is sufficient to plead disparate treatment on information and belief. *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir.2003). Measured against this standard, Plaintiffs' complaint is sufficient. The complaint is also sufficient in the pleading of either ill will or irrational action by Defendants. Discovery will reveal whether Plaintiffs' allegations are borne out by the facts. At this point, however, a claim has been stated. The court therefore denies the motion to dismiss the Equal Protection claim and allows the claim to proceed to discovery.

### IV. State Law Fraud Claim

■ New York law provides for absolute immunity for state and local employees when they perform discretionary functions. In such cases, the employee is not liable for injury, "even if resulting from negligence or malice." *Tango v. Tulevech*, 61 N.Y.2d 34, 471 N.Y.S.2d 73, 76, 459 N.E.2d 182 (1983). While the distinction between discretionary and ministerial acts is not always clear, discretionary acts, to which immunity applies, are those that involve the exercise of judgment that could result in different results. *Id.* at 77, 459 N.E.2d 182.

■ Application of this rule leads to the clear conclusion that Defendants here are immune from the state law claim for fraud. The acts forming the basis of the complaint are not ministerial in nature but, instead, involve the exercise of discretion. Clearly, Defendants exercised discretion when determining the proper course of action with respect to the Plaintiffs' operation of treatment centers. Whether those decisions were right, wrong, Constitutionally proper or defective is not the issue. Instead, the issue is whether those decisions involved the exercise of judgment. Because the court holds that they did, immunity bars the state law claim.

Plaintiffs' reliance on *Haddock v. City of New York*, 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d 987 (1990), is misplaced. There, the Court of Appeals held that an immunity defense was not available where there was no evidence that the City of New York exercised any discretion in the making of a hiring decision. In *Haddock*, there was no effort on the part of the City to comply with personnel procedures. Here, in contrast, it is clear that decisions made with respect to Plaintiffs' operating certificates were made in the exercise of judgment and pursuant to procedures. Whether those procedures were Constitutionally adequate is another matter, but one that, under the facts of this case, is unrelated to the immunity question. Accordingly, the court dismisses the state law fraud claim on the ground of absolute immunity.

### CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint is granted in part and denied in part. The motion is denied

with respect to the Due Process and Equal Protection claims. The motion to dismiss the state law claim of fraud is granted on the ground of absolute immunity. The Clerk of the Court is directed to terminate the motion to dismiss and the parties are directed to proceed with discovery as to those claims that remain.

SO ORDERED.